## UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| AKALINA ASSOCIATES INC. f/k/a ASHTABULA RUBBER CO. | : |
| Plaintiff, | : : : |
| v. | : : |
| UNITED STATES OF AMERICA; OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE; ROBERT E. LIGHTHIZER, U.S. TRADE REPRESENTATIVE; U.S. CUSTOMS & BORDER PROTECTION; TROY A. MILLER, U.S. CUSTOMS & BORDER PROTECTION ACTING COMMISSIONER, | : : Case No. 1:20-cv-00998 : : : : : |
| Defendants. | : : |

## AMENDED COMPLAINT

Plaintiff Akalina Associates Inc. f/k/a Ashtabula Rubber Co. ("Plaintiff"), by and through undersigned counsel, hereby brings this Amended Complaint against the United States of America, Office of the United States Trade Representative, and U.S. Customs & Border Protection ("Defendants") for violations of Section 301 of the Trade Act (19 U.S.C. § 2411) and the Administrative Procedure Act (5 U.S.C. § 706). In support thereof, Plaintiff avers as follows:

## NATURE OF AMENDED COMPLAINT

1.     This action arises out of Defendants' unlawful imposition of *ad valorem* tariffs on goods imported by Plaintiff from  the People's Republic of China pursuant to Section 301 of the Trade Act (19 U.S.C. § 2411), which has resulted in economic harm to Plaintiff. Specifically, this action targets Defendants' dramatic and unwarranted expansion of tariffs to items produced in China and imported into the United States as identified on List 3. *See Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer,*

*Intellectual Property, and Innovation*, 83 Fed. Reg. 47,974 (Sept. 21, 2018) (hereinafter "List 3"). Defendants are in wrongful possession of the Section 301 duties on Plaintiff's imported goods.

2.    The Office of the United States Trade Representative ("USTR"), acting under authority granted by the United States Congress under the Trade Act of 1974 ("Trade Act") initiated an investigation into China's unfair intellectual property policies and practices pursuant to Section 301 of the Trade Act (19 U.S.C. § 2411).

3.    Section 304 of the Trade Act (19 U.S.C. § 2414) requires the USTR to determine what action to take within twelve (12) months after initiation of the investigation. Within the twelve months following initiation of the investigation, the USTR determined to impose import tariffs on goods from China pursuant to Section 301 of the Trade Act on two groups of tariff codes titled List 1 and List 2. The USTR subsequently implemented tariffs on additional tariff codes titled List 3, but failed to do so within twelve months after initiation of the investigation. This untimely and unjustified overreach of the original Section 301 action is a violation of the Trade Act. Pursuant to List 3, Defendants adversely affected and aggrieved Plaintiff because it was required to pay and did pay unlawful duties.

4.    Section 307 of the Trade Act (19 U.S.C. § 2417) authorizes the USTR to modify a prior valid action under Section 301(b), but does not authorize the USTR to imposed additional tariffs not tied to the acts, policies, or practices that are subject of the investigations. The USTR's determination to implement tariffs on List 3 was not a valid modification of its initial action since it was not based upon the acts, policies, or practices covered by the investigation.

5.    The arbitrary manner in which Defendants implemented List 3 tariff actions violates the Administrative Procedure Act ("APA"). In a hurried and chaotic fashion, the USTR did not provide sufficient opportunity for comment particularly in rebuttal to public opposition,

failed to appropriately apply its own factors when determining those items to which tariffs or tariff exclusions were applicable, and made no effort to reasonably and rationally substantiate its decision-making. The USTR failed to address thousands of comments in promulgating List 3.

6.      The Court should set aside Defendants' actions as *ultra vires* and otherwise contrary to law, as well as order Defendants to refund with interest duties paid by Plaintiff pursuant to List 3.

**JURISDICTION**

7.      The Court possesses subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1581(i)(1)(B), which confers "exclusive jurisdiction" to the Court over "any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for [] tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue."

**THE PARTIES**

8.      Plaintiff is in the business of manufacturing various rubber products. On or about January 28, 2022, Ashtabula Rubber Co. changed its corporate name to Akalina Associates Inc. Plaintiff imports various products subject to duties that were paid under List 3. Plaintiff has made numerous entries of products classified under the Harmonized Tariff of the United States ("HTUS") subheadings, which are subject to the additional *ad valorem* duties under List 3. *See* List 3. Specifically, Plaintiff made entries of products classified under the following HTUS subheadings subject to *ad valorem* duties under List 3:

| Table 1.1 - List 3 | |
|---|---|
| 4016.93.1050 | 4016.93.5050 |
| 4016.99.6050 | 7616.9951.90 |
| 8507.90.4000 | |

9.      Defendant, United States of America, received the disputed tariffs and is the statutory defendant under 5 U.S.C. § 702 and 28 U.S.C. § 1581(i)(1)(B).

10.      The Office of the USTR is an executive agency of the United States charged with investigating a foreign country's trade practices under Section 301 of the Trade Act and implementing "appropriate" responses, subject to the direction of the President. The USTR conducted the Section 301 investigation at issue and made numerous decisions regarding List 3.

11.      Ambassador Robert Lighthizer currently holds the position of the USTR and serves as the director of the Office of the USTR. In these capacities, he made numerous decisions regarding List 3.

12.      Defendant U.S. Customs & Border Protection ("CBP") is the agency that collects duties on imports. CBP collected payments made by Plaintiffs to account for the tariffs imposed by the USTR under List 3.

13.      Defendant Troy A. Miller is the Acting Commissioner of CBP. In this capacity, he oversees CBP's collection of duties paid by Plaintiffs under List 3.

## STANDING

14.      Plaintiff was "adversely affected or aggrieved by agency action within the meaning of" the APA. 5 U.S.C. § 702; *see* 28 U.S.C. § 2631(i) ("Any civil action of which the Court of International Trade has jurisdiction . . . may be commenced in the court by any person adversely affected or aggrieved by agency action within the meaning of Section 702 of title 5."). Tariffs imposed by Defendants pursuant to List 3 adversely affected and aggrieved Plaintiff because it was required to pay these unlawful duties.

## TIMELINESS OF THE ACTION

15.      A plaintiff must commence an action under 28 U.S.C. § 1581(i)(1)(B) "within two years after the cause of action first accrues." 28 U.S.C. § 2636(i).

16.    Plaintiff contests action taken by Defendants that resulted in List 3 and consequent tariffs paid thereunder.  *See* List 3.

17.    This cause of action is filed within two years of the date that Plaintiff paid the List 3 duties. Plaintiff's claims accrued at the earliest on September 24, 2018 when tariffs were first levied on goods on List 3 pursuant to the USTR's determination published in the Federal Register on September 21, 2018. *Id*.

18.    The instant action was filed within two years of the date that Plaintiff paid the List 3 duties.

19.    Plaintiff has therefore timely filed this action.

## **FACTUAL BACKGROUND**

20.    Plaintiff incorporates the above preliminary statements and allegations as if rewritten here.

21.    On August 14, 2017, President Trump directed the United States Trade Representative, Ambassador Lighthizer to consider initiating a targeted investigation pursuant to Section 301(b) of the Trade Act concerning China's laws, policies, practices, and actions related to intellectual property, innovation, and technology. *Addressing China's Laws, Policies, Practices, and Actions Related to Intellectual Property, Innovation, and Technology*, 82 Fed. Reg. 39,007 (Aug. 17, 2017).

22.    On August 18, 2017, the USTR formally initiated an investigation into "whether acts, policies, and practices of the Government of China related to technology transfer, intellectual property, and innovation are actionable under [Section 301(b) of] the Trade Act." *Initiation of Section 301 Investigation; Hearing; and Request for Public Comments: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 82 Fed. Reg. 40,213 (Aug. 24, 2017).

23.     On March 22, 2018, the USTR released a report announcing the results of its investigation. OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *Findings of the Investigation Into China's Acts, Policies, And Practices Related to Technology Transfer, Intellectual Property, and Innovation Under Section 301 of The Trade Act of 1974* (Mar. 22, 2018), *available at* https://ustr.gov/sites/default/files/Section%20301%20FINAL.PDF. The USTR found that certain "acts, policies, and practices by the Chinese government related to technology transfer, intellectual property, and innovation are "unreasonable or discriminatory and burden or restrict U.S. commerce." *Id.* at 17. The USTR based its findings on (1) China's use of foreign ownership restrictions, foreign investment restrictions, and administrative licensing and approval processes to pressure technology transfers from U.S. to Chinese companies, *id.* at 45; (2) China's use of licensing processes to transfer technologies from U.S. to Chinese companies on terms that favor Chinese recipients, *id.* at 48; (3) China's facilitation of systematic investment in, and acquisition of, U.S. companies and assets by Chinese entities to obtain technologies and intellectual property for purposes of large-scale technology transfer, *id.* at 147; and (4) China's cyber intrusions into U.S. computer networks to gain access to valuable business information. *Id.* at 171. In its report, the USTR did not quantify the burden or restriction imposed on U.S. commerce by the investigated practices.

24.     Also on March 22, 2018, the USTR indicated that it would "propose additional tariffs" of 25% *ad valorem* "on certain products of China, with an annual trade value commensurate with the harm caused to the U.S. economy resulting from China's unfair policies." OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *Section 301 Fact Sheet* (Mar. 22, 2018), *available at* https://ustr.gov/about-us/policy-offices/press-office/fact-sheets/2018/march/Section-301-fact-sheet; *see Actions by the United States Related to the Section 301 Investigation of China's*

*Laws, Policies, Practices, or Actions Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 13,099 (Mar. 27, 2018) (President Trump's directive).

25.    Defendants began imposing the so-called List 1 and List 2 duties on certain goods imported from China between April and August 2018 (i.e., within the 12-month statutory deadline from the initiation of the investigation in August 2017, *see* 19 U.S.C. § 2414(a)(2)(B)), in order to remedy the estimated harm to the U.S. economy caused by the investigated unfair practices.

26.    On April 6, 2018, the USTR published notice of its intent to impose "an additional duty of 25 percent on a list of products of Chinese origin." *Notice of Determination and Request for Public Comment Concerning Proposed Determination of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 14,906-02, 14,907 (Apr. 6, 2018). The products on the proposed list covered 1,333 tariff subheadings with a total value of "approximately $50 billion in terms of estimated annual trade value for calendar year 2018." *Id.* at 14,907. The USTR explained that it chose $50 billion because that amount was "commensurate with an economic analysis of the harm caused by China's unreasonable technology transfer policies to the U.S. economy, as covered by the USTR's Section 301 investigation." OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *Under Section 301 Action, USTR Releases Proposed Tariff List on Chinese Products* (Apr. 3, 2018), *available at* https://ustr.gov/about-us/policy-offices/press-office/press-releases/2018/april/under-section-301-action-ustr.

27.    On June 20, 2018, the USTR published notice of its final list of products subject to an additional duty of 25% *ad valorem*, a list commonly known as "List 1." *Notice of Action and Request for Public Comment Concerning Proposed Determination of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property,*

*and Innovation*, 83 Fed. Reg. 28,710 (June 20, 2018). The USTR explained that it had "narrow[ed] the proposed list in the April 6, 2018 notice to 818 tariff subheadings, with an approximate annual trade value of $34 billion." *Id.* at 28,711.

28.    Also on June 20, 2018, the USTR announced that it intended to impose a 25% *ad valorem* duty on a second proposed list of Chinese products in order to "maintain the effectiveness of [the] $50 billion trade action" grounded in its Section 301 investigation. *Id.* at 28,712. The USTR announced a proposed "List 2" covering 284 tariff subheadings with "an approximate annual trade value of $16 billion." *Id.* at 28,711–12.

29.    On August 16, 2018, the USTR published notice of the final list of products subject to an additional duty of 25% *ad valorem* in List 2, comprising "279 tariff subheadings" whose "annual trade value . . . remains approximately $16 billion." *Notice of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 40,823, 40,823-24 (Aug. 16, 2018).

30.    On June 18, 2018, President Trump directed the USTR to consider whether the United States should impose additional duties on products from China with an estimated trade value of $200 billion—despite the USTR having not yet implemented List 1 and List 2. The USTR stated that it would design the newly proposed duties to address China's threatened retaliatory measures in response to the rising trade tensions between the nations, rather than any of the harms identified in its Section 301 investigation. OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *USTR Robert Lighthizer Statement on the President's Additional China Trade Action* (June 18, 2018), *available at* https://ustr.gov/about-us/policy-offices/press-office/press-releases/2018/june/ustr-robert-lighthizer-statement-0.

31.    China retaliated by imposing 25% *ad valorem* tariffs on $50 billion in U.S. goods implemented in two stages of $34 billion and $16 billion on the same dates the United States began collecting its own 25% tariffs under List 1 (July 6, 2018) and List 2 (August 23, 2018).  The USTR then published notice of its proposal to "modify the action in this investigation by maintaining the original $34 billion action and the proposed $16 billion action, and by taking a further, supplemental action" in the form of "an additional 10 percent *ad valorem* duty on [a list of] products [from] China with an annual trade value of approximately $200 billion." *Request for Comments Concerning Proposed Modification of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 33,608, 33,608 (July 17, 2018) (emphasis added). The USTR initially set a deadline of August 17, 2018 for initial comments; August 20–23, 2018 for a public hearing; and August 30, 2018 for rebuttal comments. *Id*. at 33,608.

32.    In its notice, the USTR confirmed that it had relied on China's decision to impose "retaliatory duties" as the primary basis for its proposed action. *Id*. at 33,609. The USTR explicitly tied the $200 billion in its proposed action to the level of retaliatory duties imposed by China on U.S. imports, noting that "action at this level is appropriate in light of the level of China's announced retaliatory action ($50 billion) and the level of Chinese goods imported into the United States ($505 billion in 2017)." *Id.* Although it pointed to China's retaliatory measures, the USTR did not identify any increased burdens or restrictions on U.S. commerce resulting from the unfair practices that the USTR had investigated. *See id.*

33.    The USTR's contemporaneous press statements corroborated the contents of its notice: China's retaliatory duties motivated its proposed action. Ambassador Lighthizer stated that the proposed action came "[a]s a result of China's retaliation and failure to change its practice."

OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *Statement by U.S. Trade Representative Robert Lighthizer on Section 301 Action* (July 10, 2018), *available at* https://ustr.gov/about-us/policy-offices/press-office/press-releases/2018/july/statement-us-trade-representative.

34.    That same day, President Trump suggested that the United States' trade imbalance with China supported the decision. @realDonaldTrump, TWITTER (July 10, 2018, 9:17 PM EDT), https://twitter.com/realDonaldTrump/status/1005982266496094209. Over the following weeks, President Trump also expressed his frustration over China's purported manipulation of its currency and national monetary policy, as well as his continued displeasure over China's retaliatory tariffs and the trade imbalance between the two nations. *See, e.g.*, @realDonaldTrump, Twitter (July 20, 2018, 8:43 AM EDT), https://twitter.com/realDonaldTrump/status/1020287981020729344; @realDonaldTrump, TWITTER (July 20, 2018, 8:51 AM EDT), https://twitter.com/realDonaldTrump/status/1020290163933630464; @realDonaldTrump, TWITTER (July 25, 2018, 7:20 AM EDT), https://twitter.com/realDonaldTrump/status/1022079127799701504; @realDonaldTrump, Twitter (July 25, 2018, 7:01 AM EDT), https://twitter.com/realDonaldTrump/status/1022074252999225344.

35.    Within days of these statements, Ambassador Lighthizer announced that, in light of China's retaliatory duties, the USTR would propose to increase the additional duty from 10% to 25% *ad valorem*. Rather than addressing the practices that the USTR investigated pursuant to Section 301 of the Trade Act, he stated that China "[r]egrettably . . . has illegally retaliated against U.S. workers, farmers, ranchers and businesses." OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *Statement by U.S. Trade Representative Robert Lighthizer on Section 301 Action* (Aug. 1, 2018), *available at* https://ustr.gov/about-us/policy-offices/press-office/press-releases/2018/august/statement-us-trade-representative.

36.     Shortly thereafter, the USTR, at the direction of President Trump, formally proposed "raising the level of the additional duty in the proposed supplemental action from 10 percent to 25 percent." *Extension of Public Comment Period Concerning Proposed Modification of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 38,760 (Aug. 7, 2018). The USTR also set new dates for a public hearing over six days ending on August 27, 2018. *See id.*; *see also* OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *Public Hearings on Proposed Section 301 Tariff List* (Aug. 17, 2018) (modifying hearing schedule), *available at* https://ustr.gov/about-us/policy-offices/press-office/press-releases/2018/august/public-hearings-proposed-section-301.

37.     At the same time, the USTR adjusted the deadlines for the submission of written comments, setting September 6, 2018—less than a month later—as the new deadline for both *initial and rebuttal* comments from the public. 83 Fed. Reg. at 38,761. That adjustment, deviating from its past practices, prevented both the USTR and the public from considering initial comments at the hearing, and left insufficient time for interested parties to review and respond to the initial comments filed by other parties. The USTR also limited each hearing participant to five minutes. Docket No. USTR-2018-0026, https://beta.regulations.gov/document/USTR-2018-0026-0001. Despite those obstacles, approximately 350 witnesses appeared at the six-day hearing, and the public submitted over 6,000 comments. *Id.*; Letter from ACWJC to Ambassador Lighthizer, *ACWJC Post-Hearing Rebuttal Comments* (Sept. 6, 2018), https://www.regulations.gov/document?D=USTR-2018-0026-5355; Letter from ACWJC to Ambassador Lighthizer, *Comments of ACWJC* (Sept. 6, 2018), https://beta.regulations.gov/document/USTR-2018-0026-5355.

38.    Eleven days after receiving final comments from the public, President Trump announced that he had directed the USTR "to proceed with placing additional tariffs on roughly $200 billion of imports from China." THE WHITE HOUSE, *Statement from the President* (Sep. 17, 2018)  https://www.whitehouse.gov/briefings-statements/statement-from-the-president-4/.   Once again, the President made clear that China's response to the $50 billion tariff action (i.e., List 1 and List 2 duties) motived his decision, and he immediately promised to proceed with "phase three" of the plan—an *additional $267 billion tariff action*—"if China takes retaliatory action against our farmers or other industries." *Id.*

39.    Following the President's announcement, the USTR published notice of the final list of products subject to an additional duty, known as List 3. The USTR imposed a 10% *ad valorem* tariff that was set to rise automatically to 25% on January 1, 2019. *Id.* The USTR determined that the List 3 duties would apply to all listed products that enter the United States from China on or after September 24, 2018. *Id.* The USTR did not respond to any of the over 6,000 comments that it received or any of the testimony provided by roughly 350 witnesses. *Id.*

40.    As legal support for its action, the USTR for the first time cited Section 307(a)(1)(B) of the Trade Act, which provides that the USTR "may modify or terminate any action, subject to the specific direction . . . of the President . . . taken under Section 301 if . . . the burden or restriction on United States commerce of the denial of rights, or of the acts, policies, or practices, that are the subject of such action has increased or decreased." List 3 (brackets omitted). The USTR stated that the relevant burden "continues to increase, including following the one-year investigation period," adding that "China's unfair acts, policies, and practices include not just its specific technology transfer and IP polices referenced in the notice of initiation in the investigation, but also China's subsequent defensive actions taken to maintain those policies." *Id.* The USTR

also cited Section 307(a)(1)(C) of the Trade Act, arguing that China's response to the $50 billion tariff action "has shown that the current action no longer is appropriate" because "China openly has responded to the current action by choosing to cause further harm to the U.S. economy, by increasing duties on U.S. exports to China." *Id.* at 47,975.

41.    In the months that followed, China and the United States attempted to resolve their differences through trade negotiations. Based on the progress made with China in those negotiations, the Trump Administration announced in December 2018, and again in February 2019, that it would delay the scheduled increase in the List 3 duty rate from 10 to 25%. *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 65,198-02 (Dec. 19, 2018); *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 7,966-02 (Mar. 5, 2019).

42.    The trade negotiations ultimately fell apart. In May 2019, the USTR announced its intent to raise the tariff rate on List 3 goods to 25%, effective either May 10, 2019 or June 1, 2019, depending on the day of export. *See Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 20,459-01 (May 9, 2019) ("*List 3 Rate Increase Notice*"); *see also Implementing Modification to Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 21,892-01 (May 15, 2019). The notice cited China's decision to "retreat from specific commitments agreed to in earlier rounds" of negotiations as the basis for the increase in the duty rate. *List 3 Rate Increase Notice*, 84 Fed. Reg. at 20,459. Unlike with past imposition of new tariffs, the USTR did not seek public comment but rather simply announced that the increase would occur. *Id.*

43.     Recognizing that List 3 would cause substantial harm to U.S. companies and consumers, as well as the U.S. economy, the USTR in June 2019 invited the public to seek exclusions from List 3 duties on a product-specific basis. *Procedures for Requests to Exclude Particular Products From the September 2018 Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 29,576-01 (June 24, 2019).

44.     The duties imposed on products covered by List 3 remain in effect as of the date of this Amended Complaint, with the exception of the limited number of products for which the USTR extended its originally granted exclusions from the List 3 duties. *See, e.g.*, *Notice of Product Exclusion Extensions: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 85 Fed. Reg. 48,600 (Aug. 11, 2020).

<u>**COUNT ONE**</u>
**DECLARATORY JUDGMENT — VIOLATION OF THE TRADE ACT OF 1974**

45.     Plaintiff incorporates the above preliminary statements and allegations as if rewritten here.

46.     The Declaratory Judgment Act authorizes any court of the United States to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

47.     The Trade Act of 1974 does not authorize the actions taken by Defendants that resulted in the List 3 tariffs.

48.     Pursuant to Section 301 of the Trade Act, the USTR may impose tariffs when it determines that "an act, policy, or practice of a foreign country is unreasonable or discriminatory and burdens or restricts United States commerce, and action by the United States is appropriate."

19 U.S.C. § 2411(b). The USTR failed to predicate its action giving rise to List 3 on any such determination.

49.     If the USTR concludes upon investigation that a foreign country maintains an unfair trade practice, Section 304 of the Trade Act requires the USTR to "determine what action, if any," to take within "12 months after the date on which the investigation is initiated." 19 U.S.C. § 2414(a)(1)(B), (2)(B). The USTR's action giving rise to List 3 occurred in September 2018, over a year after USTR initiated the underlying Section 301 investigation on August 18, 2017.

50.     Section 307 of the Trade Act authorizes the USTR to "modify or terminate" an action taken pursuant to Section 301(b) of the Trade Act when the burden imposed on U.S. commerce from the foreign country's investigated unfair acts, policies, or practices increases or decreases. 19 U.S.C. § 2417(a)(1)(B). Section 307 of the Trade Act, however, does not permit Defendants to increase tariffs for reasons unrelated to the acts, policies, or practices that the USTR investigated pursuant to Section 301 of the Trade Act. Congress did not authorize the USTR to escalate its focused investigatory findings into an open-ended trade war.

51.     Section 307 of the Trade Act also authorizes the USTR to "modify or terminate" an action taken pursuant to Section 301(b) of the Trade Act if the initial action taken by the USTR "is no longer appropriate." 19 U.S.C. § 2417(a)(1)(C). Section 307 of the Trade Act does not authorize Defendants to *increase* tariff actions that are no longer "appropriate," but rather only to delay, taper, or terminate such actions.

52.     Defendants are in wrongful possession of the Section 301 duties on Plaintiff's entries of products under the following HTUS subheadings:

| Table 1.1 - List 3 | |
|---|---|
| 4016.93.1050 | 4016.93.5050 |
| 4016.99.6050 | 7616.9951.90 |
| 8507.90.4000 | |

53.    Defendants' unreasonable and discriminatory acts resulted in economic harm to Plaintiff.

54.    Plaintiffs are therefore entitled to a declaratory judgment that Defendants' actions giving rise to List 3 are *ultra vires* and contrary to law.

## COUNT TWO
## VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT

55.    Plaintiff incorporates the above preliminary statements and allegations as if rewritten here.

56.    The APA authorizes the Court to hold unlawful and set aside agency action that is: "(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (D) without observance of procedure required by law; [or] (E) unsupported by substantial evidence." 5 U.S.C. § 706(2).

57.    Defendants acted without a rational basis when they arbitrarily and unlawfully promulgated List 3 because they did not provide a sufficient opportunity for comment, failed to meaningfully consider relevant factors when making their decisions, and failed to adequately explain their rationale.

58.    Defendants acted unlawfully when they preordained decision-making resulted in the unlawful imposition of tariffs on imports covered by List 3.

59.    Defendants exceeded their authority under the Trade Act in promulgating List 3 and therefore acted not in accordance with the law and in excess of statutory authority for the reasons set forth in Count One.

60.    Defendants failed to offer any evidence for any asserted increased burden from China's intellectual property policies and practices that were the subject of the USTR's Section 301 investigation.

61.    Defendants' violation of the APA was prejudicial and has resulted in economic prejudice to Plaintiff.

## **PRAYER FOR RELIEF**

**WHEREFORE**, in light of the above allegations, Plaintiff respectfully request that this Court grant the following relief:

(1)    Declare that Defendants' actions resulting in tariffs on products covered by List 3 are unauthorized by, and contrary to, the Trade Act;

(2)    Declare that Defendants arbitrarily and unlawfully promulgated List 3 in violation of the APA;

(3)    Vacate the List 3 rulemaking;

(4)    Order Defendants to refund, with interest, all duties paid by Plaintiff pursuant to List 3;

(5)    Permanently enjoin Defendants from applying List 3 against Plaintiff and collecting any duties from Plaintiff pursuant to List 3;

(6)    Any other relief this Court deems just and proper, including an award of costs, interest, and attorney's fees under any applicable law.

Respectfully submitted,


 /s/ Eric Larson Zalud
ERIC LARSON ZALUD
NORA K COOK
LAURA E. KOGAN

Dated: April 25, 2024          BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP
127 Public Square, Suite 4900
Cleveland, Ohio 44114
T: 216-363-4500; F: 216-363-4588
ezalud@beneschlaw.com
ncook@beneschlaw.com
lkogan@beneschlaw.com


*Counsel to Plaintiff*